## Linda DiBerardino *v.* Mario DiBerardino (13717)

Peters, C. J., Shea, Callahan, Glass, and Santaniello, Js.

Argued November 7, 1989—decision released January 2, 1990

*Jeffrey D. Mickelson,* for the appellant (defendant).

*Patricia Pac,* assistant attorney general, with whom were *Joseph X. Dumond, Jr.,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* attorney general, and *Robert Statchen,* assistant attorney general, for the appellee (state).

SHEA, J. The marriage between the plaintiff, Linda DiBerardino, and the defendant, Mario DiBerardino, was dissolved on April 14, 1983, by the judgment of a state trial referee, *Hon. Simon S. Cohen,* exercising the powers of the Superior Court. Pursuant to the dissolution, the plaintiff was awarded custody of the couple's two children and the defendant was ordered to make periodic payments toward the children's support. On March 30, 1988, the state, on behalf of the plaintiff, filed a motion to modify support, alleging that the plaintiff was a recipient of "IV-D"[1] services and requesting an increase in the amount of the support payments being made by the defendant. The defendant subsequently filed his own motion to modify support, seeking a reduction in the amount of his required payments. After these motions had been referred by

---

[1] As used throughout this opinion, the shorthand phrase IV-D refers to the statutory scheme set forth in 42 U.S.C. chapter 7 ("Social Security"), subchapter IV ("Grants to States for Aid and Services to Needy Families with Children and for Child-Welfare Services"), part IV-D ("Child Support and Establishment of Paternity").

the court, *Freed, J.,* evidence in support of both motions was heard by *Katherine Y. Hutchinson,* a family support magistrate, whose findings of fact and recommendation for an increase in the amount of the defendant's support payments were approved by the court, *Kline, J.,* on January 12, 1989. The defendant appealed to the Appellate Court and we transferred the case to our docket pursuant to Practice Book § 4023.

In his appeal, the defendant makes a wholesale constitutional attack on the validity of General Statutes § 46b-231 (m) (4), a portion of the Family Support Magistrate's Act, General Statutes § 46b-231 et seq., and also takes issue with the legal and factual basis of the order increasing the amount of his support payments. We find no error.

I

The defendant makes three separate constitutional arguments challenging the validity of the Family Support Magistrate's Act. The defendant asserts that § 46b-231 (m) (4): (1) violates the equal protection guarantees contained in article first, § 20 of the Connecticut constitution and the fourteenth amendment to the United States constitution,[2] by making an irrational distinction between the child support modification procedures followed in IV-D and non IV-D cases; (2) violates the judicial selection provisions of article fifth, § 2 of the Connecticut constitution,[3] since motions

[2] Article first, § 20 of our state constitution provides in part: "No person shall be denied the equal protection of the law."

The fourteenth amendment to the United States constitution provides in part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[3] Article fifth, § 2 of our state constitution provides: "The judges of the supreme court and of the superior court shall, upon nomination by the governor, be appointed by the general assembly in such manner as shall by law be prescribed. They shall hold their offices for the term of eight years, but may be removed by impeachment. The governor shall also remove them on the address of two-thirds of each house of the general assembly."

for modification of child support orders in IV-D cases are "decided" by a family support magistrate; and (3) for the same reason, constitutes an infringement upon the power of the judiciary, in violation of article second and article fifth, § 1 of the Connecticut constitution and article III, § 1 of the United States constitution.[4] We decline to review the defendant's equal protection claim and conclude that the statutory procedure followed in this case did not violate any provision of our state constitution.[5] There is no valid federal constitutional claim raised, however, since article III, § 1 is inapplicable to state courts.

The defendant's constitutional claims were neither presented to nor considered by either the family support magistrate or the trial court. "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 4185. We would ordinarily, therefore, decline to address any of the defendant's various constitutional arguments. *Sands* v. *Sands,* 188 Conn. 98, 106, 448 A.2d 822 (1982), cert. denied, 459

---

[4] Article second of our state constitution provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

Article fifth, § 1 of our state constitution provides: "The judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law."

Article III, § 1 of the United States constitution provides in part: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

[5] As the defendant conceded at oral argument, while potentially persuasive as precedent, opinions of the United States Supreme Court interpreting the separation of powers provisions of the federal constitution are not binding on this court when we are called upon to interpret the corresponding provisions of our state constitution.

U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983); *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* 183 Conn. 369, 377, 439 A.2d 396 (1981). "A recognized exception to this rule[, however,] is that a challenge to the jurisdiction of a court to render a judgment may be raised at any time, because the lack of subject matter jurisdiction cannot be waived. *LaBow* v. *LaBow,* 171 Conn. 433, 440, 370 A.2d 990 (1976); *Connecticut Steel Co.* v. *National Amusements, Inc.,* 166 Conn. 255, 262–63, 348 A.2d 658 (1974)." *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 499, 508 A.2d 415 (1986).

Of the three separate claims set forth in the defendant's statement of the issues, only two, those addressing the appointment of judges and the power of the judiciary, bring into question "the authority of the adjudicative agency whose action was essential to rendition of the judgment." Id. For this reason, we decline to address the equal protection portion of the defendant's constitutional claims of error and turn our attention to the defendant's arguments regarding judicial power and selection. Those claims are predicated upon the defendant's assertion that the plaintiff's motion for modification was heard and ruled upon in accordance with General Statutes § 46b-231 (m) (4).[6] Our review of the record, however, leads us to conclude that the motion in question was heard and ruled upon pursuant to General Statutes § 46b-86 (c),[7] since the matter was

---

[6] General Statutes (Rev. to 1989) § 46b-231 (m) (4) provides: "Motions for modification of existing child and spousal support orders entered by the superior court in IV-D cases shall be brought in the family support magistrate division and decided by a family support magistrate. Family support magistrates, in deciding if a spousal or child-support order should be modified, shall make such determination based upon the criteria set forth in section 46b-84. A person who is aggrieved by a decision of a family support magistrate modifying a superior court order is entitled to appeal such decision in accordance with the provisions of subsection (n) of this section."

[7] General Statutes (Rev. to 1989) § 46b-86 (c) provides: "When one of the parties, or a child of the parties, is receiving or has received aid or care from the state under its AFDC program as provided in Title IV-A of the

"referred to the family support magistrate division for a finding of fact and report to the court." With the record in this posture we leave for another time a determination of the constitutionality of § 46b-231 (m) (4) when a family support magistrate exercises greater authority, and conclude, primarily on the basis of our prior holdings in *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, and *Monroe* v. *Monroe,* 177 Conn. 173, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979), that § 46b-86 (c) is not violative of our state constitution.

Before we address the merits of the defendant's claims, it is appropriate for us to detail both the statutory scheme under consideration, as well as the specific proceedings before the family support magistrate and the trial court. The record and transcript in this case reveal that both the parties and the trial court were somewhat daunted by the intertwining nature of § 46b-231 (m) (4) of the Family Support Magistrate's Act, and § 46b-86, entitled "Modification of alimony or support orders and judgments." A thorough dissection of the various statutory provisions regarding modification of child support orders reveals that there existed, at the time the parties' motions were considered, three distinct procedures for hearing such motions. The particular procedure to be followed was dependent upon the status of the parties and the nature of the original support order.

First, § 46b-86 (a)[8] provides that, unless modification is otherwise precluded, any final order for the payment

Social Security Act or under its foster care program as provided in Title IV-E of the Social Security Act, or where one of the parties has applied for child support enforcement services under Title IV-D of the Social Security Act as provided in section 17-31i, such motion to modify shall be referred to the family support magistrate division for a finding of fact and report to the court."

[8] General Statutes § 46b-86 (a) provides in part: "Unless and to the extent that the decree precludes modification, any final order for the periodic pay-

of child support may be "altered or modified *by said court* upon a showing of a substantial change in the circumstances of either party." (Emphasis added.) Second, § 46b-86 (c) provides that when one of the parties is receiving or has received aid from the state, as provided in title IV-A or IV-E of the Social Security Act, or has "applied" for IV-D services, a motion for modification of support payments "shall be referred to the family support magistrate division for a *finding of fact and report to the court.*" (Emphasis added.) Finally, § 46b-231 (m) (4) provides that motions for modification of support orders "entered by the superior court *in IV-D cases*[9] shall be brought in the family support magistrate division and *decided by a family support magistrate.*" (Emphasis added.) Thus, in order to determine which procedure should be utilized in a particular case, the following relevant inquiries must be made: (1) whether the original support order was entered by the Superior Court in a IV-D case; and (2) whether either of the parties to the original order has received or applied for services as provided in § 46b-86 (c).[10]

---

ment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party."

[9] General Statutes § 46b-231 (b) (15) provides: " 'IV-D support cases' are actions for child and spousal support under Title IV-D of the Social Security Act and include cases in which support rights have been assigned to the state in AFDC cases and in foster care cases or cases in which a person has applied to the Connecticut child support enforcement bureau for child-support enforcement services."

[10] We note that both General Statutes § 46b-86 (c) and § 46b-231 (m) (4) have been modified by No. 89-360 of the 1989 Public Acts, effective July 1, 1989. Section 46b-86 (c) now provides in part: "[S]uch motion to modify shall be filed with the family support magistrate division for determination in accordance with subsection (m) of section 46b-231 . . . . "

Section 46b-231 (m) (4) now provides in part: "Motions for modification of existing child and spousal support orders entered by the superior court in IV-D cases, including motions to modify existing child and spousal support orders entered in actions brought pursuant to chapter 815j, shall be brought in the family support magistrate division and decided by a family

The record shows that the original support order in this case was entered on April 14, 1983, and was modified on June 23, 1983, by the Superior Court, *Daly, J.,* to allow a reduction in the defendant's support payments while the children stayed with him during the summer. From these facts, we conclude that the original support order was certainly not entered in a IV-D case, since the Family Support Magistrate's Act did not come into existence until the enactment of No. 86-359 of the 1986 Public Acts. In answer to the second question posed above, it is undisputed that the plaintiff applied for and subsequently received services provided by the Connecticut child support enforcement bureau. See General Statutes § 17-31i (h). Thus, because § 46b-86 (c) is applicable and § 46b-231 (m) (4) is not, the motions of both parties for modification should have been brought in the Superior Court and referred to a family support magistrate "for a finding of fact and report to the court." General Statutes § 46b-86 (c). Our task now is to determine whether this procedure was indeed followed in this case.

The record reveals that the plaintiff's motion was originally directed to the family support magistrate session of the judicial district of Hartford-New Britain, and, in accordance with Practice Book § 479A,[11] was

---

support magistrate, except that an order to modify existing child and spousal support orders entered in actions brought pursuant to chapter 815j shall be subject to the approval of a judge of the superior court and may be modified by such judge."

The constitutional implications, if any, of these modifications are not pertinent to our discussion of the defendant's various constitutional claims.

[11] Practice Book § 479A provides:

"(a) The procedure in any matter which is to be heard and determined by a family support magistrate shall conform, wherever applicable, to the procedure in and for the superior court except as otherwise provided herein.

"(b) (1) Any pleading or motion filed in a family support magistrate matter shall indicate, in the lower right hand corner of the first page of the document, that it is a family support magistrate matter.

captioned as a family support magistrate matter. On April 26, 1988, a hearing was held by the Superior Court, *Freed, J.*, because of a potential conflict between the defendant's counsel and the family support magistrate who was to have conducted the hearing on the plaintiff's motion. At this hearing, the plaintiff received a copy of the defendant's motion for modification and requested that her motion for modification be referred to a different magistrate, pursuant to § 46b-231 (m) (4). The transcript of this hearing reveals, however, that the referral to the magistrate was intended to be for factfinding and a report to the court, the procedure set forth in § 46b-86 (c).[12] The defendant's motion for modification was kept on the calender in the Superior Court, although it too was later brought before the family support magistrate when the plaintiff's motion was heard.

Hearings on both motions were conducted before magistrate Hutchinson on July 12, August 22, and September 29, 1988. At the conclusion of the presentation of testimony, the magistrate made it clear that "this being a modification of a Connecticut dissolution action, I have to do a finding of fact and report, which will contain a recommendation that goes to the Superior Court judge . . . ." The magistrate's report, entitled "FAMILY SUPPORT MAGISTRATE'S FINDING OF

"(2) Matters to be heard and determined by a family support magistrate shall be placed on the family support magistrate list.

"(3) Matters on the family support magistrate list shall be assigned automatically by the family support magistrate clerk without the necessity of a written claim. No such matters shall be so assigned unless filed at least five days before the opening of court on the day the list is to be called.

"(4) Matters upon the family support magistrate list shall not be continued except by order of a family support magistrate."

[12] The trial court inquired why the plaintiff's action had been brought before a family support magistrate rather than the Superior Court. Upon being informed that the state could represent the plaintiff only before a family support magistrate, the trial court opined that, while the plaintiff maintained the right to choose her forum, the matter was "only going to come back up here eventually . . . ."

FACT AND REPORT PURSUANT TO CGS SEC.
46B-86 (c) . . . ," recommended that the plaintiff's
motion be granted and that the defendant's motion be
denied. After this report was filed in the Superior
Court, the defendant, "pursuant to Conn. Gen. Stat.
46b-231 (n) (2) and Practice Book Section 4009," moved
for reargument and/or a rehearing before the family
support magistrate. The plaintiff opposed this motion,
arguing that since the magistrate had the duty to find
facts and make a report to the court, the defendant's
proper course of action was to file objections to the
report of the magistrate. See Practice Book §§ 428
through 445.

Having heard argument by both parties, the Supe-
rior Court, *Kline, J.,* denied the motion for reargument
and approved the findings made by the magistrate. The
court then informed the defendant: "You can take an
appeal from the decision to approve the findings, or
you can make your motion for a rehearing, in accord-
ance with the statute, based upon the decision of the
Court." Thereafter, the defendant, relying upon
§ 46b-231 (n) (1),[13] filed an appeal to the Superior Court
as well as a motion to reargue. The plaintiff filed an
objection, claiming that the defendant's proper rem-
edy was an appeal to the Appellate rather than the
Superior Court. Thereafter, Judge Kline heard argu-
ment by the defendant in support of his contention that
§ 46b-231 (n) allowed him to appeal the decision of the
magistrate to the Superior Court. The court denied the
defendant's motion to reargue, concluding that "the
Appellate Court [could] worry about how to interpret
all these various sections of the statute. There's a lot
of confusion."[14]

---

[13] General Statutes § 46b-231 (n) (1) provides: "A person who is aggrieved
by a final decision of a family support magistrate is entitled to judicial review
by way of appeal under this section."

[14] While we agree that the relevant statutory provisions are not models
of clarity, a detailed analysis of them leads to the conclusion, as we have

On the basis of this record, we conclude that the defendant lacks standing to challenge the constitutionality of § 46b-231 (m) (4) of the Family Support Magistrate's Act since the decision modifying the amount of his support payments was neither heard nor determined pursuant to that particular statute. "According to well-established principles, a [party] who challenges the constitutionality of a statute must prove that the statute has adversely affected a constitutionally protected right 'under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist.' *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698 (1966) . . . ." *Weil* v. *Miller,* 185 Conn. 495, 501, 441 A.2d 142 (1981). " '[J]udicial power is to be exercised to strike down legislation, whether state or federal, only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action.' *Poe* v. *Ullman,* [367 U.S. 497, 504, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961)] . . . ." *State* v. *Madera,* 198 Conn. 92, 106, 503 A.2d 136 (1985). In this case, we conclude that the motions to modify the defendant's support payments were heard and decided on the basis of the procedure set forth in § 46b-86 (c), and that the defendant, therefore, has not proved any adverse effect imposed upon him by the operation of § 46b-231 (m) (4) of the Family Support Magistrate's Act.

Assuming, in the alternative, that the defendant's constitutional arguments are applicable to the procedure under § 46b-86 (c), which was actually followed

set forth earlier in this opinion, that there are three distinct and separate procedures which can be followed in the modification of support orders, depending upon the status of the parties and the original order. For instance, in this case an appeal to the Superior Court pursuant to General Statutes § 46b-231 (n) would have been wholly inappropriate since there was no "decision of a family support magistrate modifying a superior court order . . . ."

in this case, we conclude that those arguments are without merit. In *Seal Audio, Inc.* v. *Bozak, Inc.,* supra, 501, we concluded that attorney referees, charged with the duty of finding facts and rendering a report to a judge of the Superior Court, were not judges of the Supreme or Superior Court, and therefore need not be appointed in accordance with the provisions of article fifth, § 2 of our state constitution. As applied to the facts of this case, we conclude that that holding is dispositive of the defendant's claim, since the magistrate here performed duties identical to those performed by the attorney referee in *Seal Audio, Inc.*

Finally, the defendant claims that the duties performed by the family support magistrate were an unconstitutional intrusion upon the independent power of the judiciary. Applying our conclusion that the magistrate in this case was performing duties identical to those of an attorney referee, we note that "[t]he state referee system, as a special tribunal, does not encroach upon, and does not unconstitutionally compete with, other constitutional courts. On the contrary, as we noted in *Florida Hill Road Corporation* [v. *Commissioner,* 164 Conn. 360, 367, 321 A.2d 856 (1973)], state referees 'serve the very practical purpose of relieving the court's crowded dockets.' " *Monroe* v. *Monroe,* supra, 180; *Seal Audio, Inc.* v. *Bozak, Inc.,* supra. To be unconstitutional in the context of the separation of powers provided for in article second of our state constitution, "a statute must not only deal with subject-matter which is within the judicial power, but it must operate in an area which lies exclusively under the control of the courts." *State* v. *Clemente,* 166 Conn. 501, 510–11, 353 A.2d 723 (1974). On the facts of this case, we accordingly find no merit to the defendant's separation of powers challenge to the actions of the family support magistrate.

## II

Regarding the merits of the modification order, the defendant first argues that he is entitled to a reversal of the trial court's approval of the findings and recommendations of the family support magistrate since those findings and recommendations were reached by utilization of an improper legal standard. The magistrate found that there had been "a substantial change of circumstances of the parties since the child support order was entered." The defendant's claim is predicated upon the fact that the magistrate failed to conclude explicitly that this substantial change had been uncontemplated at the time of the entry of the original support order. See *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976).[15]

"The correctness of a judgment of a court of general jurisdiction is presumed in the absence of evidence to the contrary. We do not presume error. The burden is on the appellant to prove harmful error." *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 7, 513 A.2d 1218 (1986). In the absence of a motion for articulation; see Practice Book § 4051; "it would be sheer speculation for this court to assume that the trial court applied the incorrect legal standard." *State* v. *Crumpton,* 202 Conn. 224, 232, 520 A.2d 226 (1987). Since there was ample evidence from which the magistrate could have concluded that the substantial change she found in the circumstances of the parties was uncontemplated at the time of the dissolution decree, we presume that the trial court applied the correct legal standard and conclude that the defendant has not met his burden of proving harmful error.

---

[15] The dissolution decree in this case was entered on April 14, 1983, and was, therefore, unaffected by the subsequent amendment to General Statutes § 46b-86 (a), authorizing modification of support orders "whether or not [any] change of circumstances was contemplated at the time of dissolution." See *Darak* v. *Darak,* 210 Conn. 462, 556 A.2d 145 (1989).

The report of the family support magistrate, as adopted by the trial court, recommended that the defendant's support payments be increased from $62.50 per child per week to $115 per child per week, and that the defendant pay the expenses of a "tutor and/or a special reading program" for his son, not to exceed $1000 per year. The factual findings of the magistrate indicate that subsequent to the 1983 dissolution order: (1) the defendant's financial situation had improved from a weekly deficit of $102 to a weekly deficit of $64; (2) the defendant's expenses included "one-half of the mortgage payments and taxes on a home owned by his present wife and one-half of the taxes on a house owned by the defendant and his brother[,]" the defendant's share of which he estimated to be worth $115,000; (3) the needs of the children could not be met with the plaintiff's disposable income combined with the original support payments; and (4) the defendant's son had a reading disability that could be "addressed with the help of a tutor and/or a special reading program." With this evidence before the family support magistrate, we conclude that the trial court could reasonably have found that the changes noted were uncontemplated at the time of the 1983 dissolution order. See *Kelepecz* v. *Kelepecz,* 187 Conn. 537, 538–40, 447 A.2d 8 (1982); *Benson* v. *Benson,* 187 Conn. 380, 383, 446 A.2d 796 (1982).

Finally, the defendant challenges the factual findings made by the family support magistrate, claiming that issues of credibility were ignored and that the evidence presented concerning his son's reading disability was insufficient to justify the order requiring the defendant to contribute $1000 per year toward a remedial reading program. Our review of these claims "is limited to deciding whether the trial court has abused its legal discretion. As we have repeatedly noted, 'trial courts have a distinct advantage over an appellate court in

dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant.' " *Hardisty* v. *Hardisty,* 183 Conn. 253, 260, 439 A.2d 307 (1981), quoting *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 262, 413 A.2d 854 (1979).

From our review of the report of the family support magistrate, we conclude that there is no merit to the defendant's claim that the issue of credibility was ignored. The report carefully outlines the evidence presented in support of both parties' motions for modification, and concludes, based on the evidence outlined above, that the needs of the children, coupled with the financial status of both parties, justified an increase in the amount of the defendant's support payments. The trial court did not abuse its discretion in adopting the findings and recommendations of the family support magistrate regarding the increase in the defendant's support payments.

We also conclude that the trial court did not abuse its discretion in adopting the magistrate's recommendation that the defendant contribute to the cost of a remedial reading program for his son. Unlike the issue of the cost of private secondary education, which we addressed in *Hardisty* v. *Hardisty,* supra, in this case there was evidence presented to the family support magistrate that would constitute "a showing of special need or some other compelling justification, for increasing the support obligation of the noncustodial parent who genuinely doubts the value of the program that he is being asked to underwrite." Id., 265. The magistrate heard evidence regarding the son's reading disability, as well as the fact that the school system in which he was enrolled did not have a program that could adequately address his needs. Consequently, the magistrate concluded that the problem should "be addressed with the help of a tutor and/or a special read-

ing program." We conclude that the trial court did not abuse its discretion in adopting the magistrate's recommendation that the defendant share in the cost of that program.

There is no error.

In this opinion the other justices concurred.