## DAMARIS CARDONA *v.* GERVACIO NEGRON
## (AC 17700)

Foti, Landau and Dupont, Js.

Argued January 21—officially released May 4, 1999

*Eliot D. Prescott,* assistant attorney general, with whom were *Ronald Blanchette,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Donald M. Longley,* assistant attorney general, for the appellant (state).

*Sydney T. Schulman,* for the appellee (defendant).

*Rhonda M. Morra,* for the minor child.

*Opinion*

LANDAU, J. The state appeals from the judgment of the Superior Court dismissing the state's appeal from

an order entered by a family support magistrate.[1] The sole issue on appeal is whether the Superior Court improperly concluded that an order of genetic testing issued by the family support magistrate without first opening the underlying judgment of paternity was not a final judgment for purposes of the appeal to the Superior Court. We reverse the judgment of the Superior Court.

The following facts are necessary for the resolution of this appeal. In June, 1990, after the plaintiff, Damaris Cardona, identified the defendant, Gervacio Negron,[2] as the father of the minor child, the bureau of child support of the department of human resources (bureau) notified the defendant by letter that the bureau needed to discuss a confidential matter with him. In addition, the letter stated that failure to comply with the request to contact the bureau could result in legal action to resolve the situation. Thereafter, in July, 1990, the defendant signed an acknowledgment of paternity[3] and the plaintiff signed an affirmation of paternity, affirming

[1] The plaintiff mother applied for welfare benefits from the state of Connecticut under the aid to families with dependent children program pursuant to Title IV-A of the Social Security Act, 42 U.S.C. § 301 et seq. By such application, the plaintiff assigned her right to child support to the state. See General Statutes § 17b-77. The state is, therefore, an aggrieved party. See General Statutes § 46b-215 (b) ("Attorney General of the state of Connecticut . . . shall become a party for the interest of the state . . . in any proceedings for support which concerns any person who is receiving or has received public assistance or care from the state . . .").

[2] We note that the defendant did not file a brief in this matter but, instead, adopted the brief of the minor child.

[3] The acknowledgment of paternity expressly notified the defendant that it had the effect of a paternity trial in which a judge had decided that the defendant was the father of the child, that he would be giving the child many rights and benefits, that he had a right to speak to an attorney before he signed the document, that he had the right to refuse to admit paternity and to have a trial in which he could be represented by counsel and that he would be responsible to support the child until the child was eighteen years old and that failure to do so could result in legal proceedings brought against him.

that the defendant was the father of the minor child. The acknowledgment was filed in the Superior Court in August, 1990.[4] In June, 1992, the family support magistrate, pursuant to General Statutes § 46b-215 (a), entered child support orders.

In June, 1995, nearly five years after the judgment of paternity had entered, the defendant filed a motion to open it. The sole basis of the defendant's motion to open was that he had signed the acknowledgment of paternity on the basis of fraud perpetrated on him by the plaintiff.[5] In July and September, 1997, the family support magistrate conducted an evidentiary hearing on the issue of fraud in which the plaintiff testified, among other things, that the minor child has cyclic neutropenia, a rare white blood cell disorder. The family support magistrate granted the defendant's motion for DNA testing and ordered the plaintiff, the defendant and the minor child to undergo genetic testing, finding that it was in the minor child's best interest to undergo the testing.[6] The family support magistrate, however, made no finding as to the issue of fraud and continued the hearing on the motion to open to a later date.

---

[4] "Unlike a suit initiated pursuant to [General Statutes] § 46b-160, the acknowledgment procedure provides an alternative to a full scale judicial proceeding, and an agreement reached pursuant to it does not require court approval. The acknowledgment procedure may be followed '[i]n lieu of or in conclusion of' a paternity action initiated pursuant to § 46b-160. Once a person signs a written acknowledgment form, that form is filed with the court and has '*the same force and effect as a judgment of the court . . . .*' General Statutes § 46b-172 (a)." (Emphasis added.) *Bleidner* v. *Searles,* 19 Conn. App. 76, 81, 561 A.2d 954 (1989).

[5] Specifically, the defendant notes that the plaintiff had claimed that the defendant was the father of a second child, but that DNA testing revealed that he was not. The defendant asserts that he has since learned that the plaintiff was untruthful when she said that he was the father of the minor child at issue in the underlying action.

[6] The state did not dispute the fact that the child has the blood disorder. Our review of the transcript, however, reveals that there was no testimony or other evidence that the genetic testing would benefit the minor child.

Thereafter, the state appealed to the Superior Court pursuant to General Statutes § 46b-231 (n) (1).[7] In its appeal, the state claimed that the family support magistrate lacked the authority to order genetic testing under General Statutes § 46b-168 (a) without first finding that the defendant proved fraud by clear and convincing evidence and without first opening the prior judgment of paternity.[8] The Superior Court dismissed the appeal, concluding that it lacked jurisdiction over the appeal because the order for genetic testing was not a final judgment but, instead, was an interlocutory decision.

On appeal to this court, the state argues that it challenges the authority of the family support magistrate to order genetic testing and, as such, its appeal is taken from a final judgment for purposes of the appeal to the Superior Court.[9] We agree and set aside the judgment of dismissal.[10]

---

[7] General Statutes § 46b-231 (n) (1) permits an appeal to the Superior Court by "[a] person who is aggrieved by a final decision of a family support magistrate . . . ."

[8] The state first raised the question of final judgment in its response to the defendant's objection to the state's appeal petition. Reference to that document is not intended to be an official recognition of that type of response. For purposes of this appeal, however, we cite to it for the limited purpose of locating the state's argument regarding final judgment. We note that the state argued the question of final judgment based on *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), which the Superior Court relied on in its decision.

[9] Specifically, the state argues that judgments of paternity may not be reconsidered more than three years after they have entered. See General Statutes § 46b-172 (b). Because the defendant filed a motion to open after the three year statute of limitations had expired, the state argues, citing *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980), that the family support magistrate lacked jurisdiction to entertain the motion to open the judgment unless the judgment was obtained by fraud, duress or mutual mistake. As such, the state argues that the family support magistrate could not open the judgment or exercise any statutory authority, such as ordering genetic testing, until the magistrate found that the 1990 judgment of paternity was obtained by fraud and opened the judgment.

[10] In *Perry* v. *Perry*, 222 Conn. 799, 804, 611 A.2d 400 (1992), overruled on other grounds, *Bryant* v. *Bryant*, 228 Conn. 630, 636 n.4, 637 A.2d 1111 (1994), the state argued that the defendant could have taken an appeal from

It is axiomatic that the jurisdiction of an appellate tribunal is limited to appeals from judgments that are final. The mortar that creates the bind is our policy "to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." *Burger & Burger, Inc.* v. *Murren*, 202 Conn. 660, 663, 522 A.2d 812 (1987). We acknowledge that in some instances it is unclear whether an order is an appealable final judgment and that there are grey areas between judgments that are undoubtedly final and others that are clearly interlocutory. *E. J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 627, 356 A.2d 893 (1975). To determine final judgments for purposes of appeal, our Supreme Court has articulated a two part test applicable to both criminal and civil proceedings. *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); see also *State* v. *Parker*, 194 Conn. 650, 653, 485 A.2d 139 (1984) (" 'separate and distinct' " requirement is first part of *Curcio* test); *Daginella* v. *Foremost Ins. Co.*, 197 Conn. 26, 31, 495 A.2d 709 (1985) (focus of second part of *Curcio* test is on potential harm to appellant's rights).

In the present case, the defendant filed a motion to open the prior judgment. It is well established that an order opening a judgment ordinarily is not a final judgment. *G. F. Construction, Inc.* v. *Cherry Hill Construction, Inc.*, 42 Conn. App. 119, 122–23, 679 A.2d 32 (1996). The defendant's argument that the magistrate's order was a nonappealable interlocutory order, which implicates both parts of the *Curcio* test, however, need not be addressed. Our Supreme Court "has recognized an exception to [the rule that the opening of judgment is

a family support magistrate's finding of contempt. The *Perry* court relied on *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), in analyzing whether the appeal was taken from a final decision pursuant to § 46b-231 (n). See footnote 7. Accordingly, in this case, in deciding whether the state's appeal taken from the family support magistrate's order to the Superior Court was a final decision, we will rely on the standard rules found in our final judgment jurisprudence.

nonappealable] where the appeal 'challenges the power of the court to act to set aside the judgment.' *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 418, 426 A.2d 1324 (1980); 4 Am. Jur. 2d, Appeal and Error § 126." *Solomon* v. *Keiser,* 212 Conn. 741, 747, 562 A.2d 524 (1989).

The defendant seeks to distinguish *Solomon* v. *Keiser,* supra, 212 Conn. 748, a progeny of *Connecticut Light & Power Co.* v. *Costle,* supra, 179 Conn. 418, by the fact that the *Solomon* court dealt with orders that granted a motion to open and set aside the judgment. In the present matter, the defendant argues that the family support magistrate's order neither opened the judgment nor vacated the paternity or the child support order. The defendant further asserts that under these circumstances, the order for genetic testing did not have the effect of setting aside the judgment and, therefore, does not meet the limited exception promulgated by *Solomon.*

The gravamen of the state's claim is not that the family support magistrate erroneously exercised its jurisdiction; see *Hill* v. *Hill,* 25 Conn. App. 452, 455–56, 594 A.2d 1041, cert. denied, 220 Conn. 917, 597 A.2d 333 (1991); but, rather, that the magistrate lacked the authority to act. See *Solomon* v. *Keiser,* supra, 212 Conn. 741. We agree with the state that *Solomon* controls this case. If the family support magistrate opened the judgment so as to permit the genetic testing, the magistrate in effect opened it without making a finding that fraud existed. If, on the other hand, the magistrate did not open the judgment, then the magistrate lacked the authority to order the genetic testing. Under either circumstance, we conclude that the state sought to challenge the authority of the family support magistrate to act. See id. As such, we conclude that the Superior Court's dismissal of the state's appeal was improper.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.