[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a claim by the plaintiff and the parties' son, Nathan, for a contribution by the defendant toward private school education and flight lessons for Nathan.[1] The marriage of the parties was dissolved on April 1, 1997. The judgment provided that the parties would have joint legal custody of Nathan, who was born on July 31, 1981,[2] and ordered that he would reside with the defendant. The judgment provided for alimony payments from the defendant to the plaintiff, and ordered that the defendant "shall be solely responsible for the support of the said minor child."
Nathan Robinson resided with his father in Glastonbury during his first year in high school, and they then moved to Newington, where the boy completed his second year. In both years, his academic performance was very poor. At the end of his sophomore year, Nathan considered dropping out of school. After talking with his mother, he decided to apply to Xavier High School, a private boys' school in Middletown where his older brother had gone after a similar early high school experience. Education for Nathan at a school such as Xavier was within his and the parties' reasonable expectation, and it was necessary for his academic success. Since he enrolled in Xavier for his junior year in the fall of 1998, his academic performance has been extraordinary. During his junior year, he earned a grade point average of nearly CT Page 15963 4.0, and his first quarter's performance as a senior has been similar.
During his junior year, Nathan also developed an interest in flying. He hopes to attend Embry-Riddle University, a college in Florida specializing in training aviators. In what he believed was an opportunity to enhance his opportunity of being admitted, he also began flying lessons in January of 1999 at a private flying school in Meriden. At that time, Nathan was still residing with his father, but his mother took him to the flying school and paid for his attendance with money she borrowed from her parents. He has done well in flight school, and was able to solo quickly. He must complete about fifty hours more to earn his pilot's license. However, if he is able to attend the college of his choice, completion of the license is a normal part of the curriculum. Nathan's involvement in flight school has been very beneficial to him. His experience has motivated him to do well in both school and flying so that he can attain his career goal. However, his family is not unified in their support of this venture. His father believes Nathan should be participating in sports and sees the flight lessons as too "luxurious" for a high school student. His mother, in contrast, supports the effort. Nathan moved to his mother's home in September, 1999 without notice to his father. He has had little contact with his father since the end of his junior year.
 I.
There are two questions of critical importance in deciding the plaintiff's April 23, 1999 motion for contempt: whether the judgment requires the defendant to pay the Xavier tuition for 1998-1999 and/or the flight school expenses; and whether the defendant's failure to pay those sums constitutes contempt. Parents are required to support a minor child who is in need of maintenance. Connecticut General Statutes, Section 46b-84(a). In determining whether a child is in need of maintenance, the court is required to consider "the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."Connecticut General Statutes, Section 46b-84(d). While the statute does not assign priority or weight to any of the particular criteria, see. eg. Tutalo v. Tutalo, 187 Conn. 249,251-52 (1982) (concerning lump sum alimony), it is clear that the court must consider all of them. The statute providing for child support includes criteria not set forth in the statutes governing CT Page 15964 alimony or property division. It requires that the court consider, in addition to all the other criteria, the child's needs and educational status and expectation.
Courts have the power to require parents to pay for private school education, Cleveland v. Cleveland, 161 Conn. 452, 461
(1971), or for a specialized program necessary to meet the educational needs of the child. DiBernadino v. DiBernadino,213 Conn. 373, 387 (1990). While the law recognizes a limitation on a noncustodial parent's obligation to pay for an educational choice the value of which the parent genuinely questions, that recognition does not amount to a veto power on the part of the dissenting parent. Hardisty v. Hardisty, 183 Conn. 253, 265
(1981) Rather, in the event of such a disagreement, the court may still order the dissenting parent to make the payment if there is "a special need or some other compelling justification." Id., 265.
In this case, there was an expectation that Nathan would attend a private high school, and it is manifest that his educational and developmental needs at the time he enrolled required him to attempt such a school. The results have been gratifying to both parents. Accordingly, the costs of attendance at that school are part of child support.[3] There was, however, no family expectation that Nathan would attend flight school while still a high school student. The defendant's doubts about the appropriateness of that program are genuine. Thus, the court is only empowered to direct payment of those expenses if there is a special need or other compelling justification. No such need or justification exists here. While the program is undoubtedly beneficial to Nathan, it is entirely speculative whether it will actually enhance his admission to the college he has chosen. Moreover, the same program is available at that college as part of the curriculum.[4] There is no compelling circumstance justifying an order that either of his parents be ordered to pay for the flight lessons. The court's finding regarding Xavier does not constitute a modification of the judgment, although a substantial change in circumstances was proven. Rather, it is an interpretation of the judgment. See,Cleveland v. Cleveland, 161 Conn. 452, 457 (1971).
Having found that the defendant's obligation of child support included an obligation to pay Nathan's expenses at Xavier, it remains to be determined whether his failure to do so amounts to contempt. "A civil contempt can involve a willful failure to CT Page 15965 comply with a then outstanding court order." Marcil v. Marcil,4 Conn. App. 403, 405 (1985); see, also, Connolly v. Connoly,191 Conn. 468, 483 (1983). However, "[o]ne cannot be placed in contempt for failure to read the court's mind." Blaydes v.Blaydes, 187 Conn. 464, 467 (1982). The judgment did not specifically state that private school tuition was included as part of child support, and the defendant cannot be found in contempt for failing to pay it; Nevertheless, in a contempt proceeding, the court has authority to make whole a party who has suffered by another party's failure to comply with the obligations imposed by a court order. Nelson v. Nelson,13 Conn. App. 355, 367 (1988); Clement v. Clement, 34 Conn. App. 641, 647
(1994).
The total sum paid by the plaintiff to Xavier for the 1998-1999 school year was $5670.[5] At the time those costs were incurred, Nathan was living with his father, who was solely responsible for child support. The defendant has the resources to make a lump sum payment.
 II.
The plaintiff has also moved to modify alimony for the period April 1, 1999 through August 31, 1999. The judgment provided that the defendant would pay the plaintiff alimony of $375 per week until March 31, 1999 and $225 per week thereafter until March 31, 2007. The judgment states: "The alimony order is based upon the Court's determination that the wife has an earning capacity of $30,000 but that she will not realize that earning capacity or will not exploit it until she completes the educational program that she's currently enrolled in which will take her through March 31, 1999." The plaintiff, through no fault or delay of her own, did not complete the stated educational program to obtain her teaching certificate until May, 1999, and did not begin her job as a school teacher until September, 1999.
Absent a provision in the decree precluding modification, periodic alimony is modifiable upon a showing of a substantial change in the circumstances of either party. Connecticut GeneralStatutes, Section 46b-86(a). There is no evidence pointing to an explanation of why the court anticipated at time of trial that the plaintiffs educational program would be completed by March 1, 1999 rather than in June, when school traditionally ends, or of why the court concluded that the plaintiff could be employed as a teacher in April, 1999, rather than in September when school usually begins. However, neither of these occurred. Indeed, the CT Page 15966 plaintiff could not have worked as a teacher until the results of the July, 1999 Praxis test for certification were returned. Accordingly, the court concludes that there was a substantial change in the plaintiffs circumstances justifying a modification of alimony between April 1, 1999 and August 31, 1999. Alimony for that period is modified to $375 per week.
The defendant has moved to modify or eliminate alimony pursuant to Section 46b-84(b) of the Connecticut General Statutes based upon the plaintiff's alleged cohabitation with another individual. While the plaintiffs testimony concerning her living arrangements at the apartment she shares with Nathan were not credible, the court does not find that the plaintiff is involved in a cohabiting relationship. Accordingly, the defendant's motion is denied.
 III.
Based upon the evidence, findings of fact, and law, and having considered the relevant statutory criteria under Sections46b-62, 82, 84, and 86, the court makes the following orders:
1. The defendant shall within thirty days pay the plaintiff $5,670 for the costs of Nathan's attendance at Xavier for 1998-1999, and to whatever extent the plaintiff invaded Nathan's UGMA account to pay that amount, she shall restore the funds to the account immediately upon receipt of them.
2. The defendant shall within thirty days pay the plaintiff the sum of $3,000 representing the increased alimony award for the period from April 1, 1999 through August 31, 1999.
3. The defendant shall pay the plaintiff child support of $125 per week commencing on September 1, 1999 until Nathan completes high school or turns nineteen, whichever occurs first. The amount represents a deviation from the presumptive child support guideline amount of $167 which is justified because of the defendant's contributions to Nathan's education and transportation. Regulations of Connecticut State Agencies, Sections 46b-215a-3(b)(2)(B) and (b)(6)(C). Between September 1 and December 15, 1999 there were fifteen weeks for which support was due but not paid. There is accordingly an arrearage of $1,875 for that period, which shall be paid at the rate of $25 per week commencing December 15, 1999 until the obligation to pay child support ends, and then to be paid at the rate of $62.50 CT Page 15967 until paid in full. Regulations of Connecticut State Agencies, Sections 46b-215-4a(b)(1)(A) and (d)(2).
4. The defendant will pay 71% of the tuition and fees at Xavier for the 1999-2000 academic year, and the plaintiff will pay 29% of the tuition and fees at Xavier for the academic year. The parties will make adjustments of sums paid under their July 30, 1999 stipulation within thirty days. The plaintiff will be responsible for all of Nathan's school clothing, uniforms, lunches, and miscellaneous expenses. The defendant will continue to pay for his transportation.
5. The plaintiff will not further encumber or utilize Nathan's UGMA account except for expenses associated with his application to or attendance at college or for his personal emergency needs or health needs without further order of the court.
6. The child's attorney is awarded attorney fees of $5,130. Each party shall pay one half of that bill within thirty days.
7. The parties shall bear their own attorney fees.
8. The defendant will keep medical insurance for Nathan as available through his employment.
ORDERS will enter accordingly.
By the Court,
Gruendel, J.