[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE STATE'S MOTION TO VACATE DETERMINATION OF UNCONSTITUTIONALITY
 I FACTS
This memorandum addresses a motion brought by the state seeking to vacate a decision by a family support magistrate declaring a Connecticut state statute unconstitutional, challenging the power of the magistrate and the appropriateness of her decision. The relevant facts and history of the case are set forth as follows.
The defendant, Aaron Damar Newton, executed an acknowledgment of paternity at Lawrence Memorial Hospital in New London, Connecticut, after Barbara Plemmons, the plaintiff-mother, gave birth to a child, Tyler Newton, on May 10, 2000. Thereafter, the plaintiff state of Connecticut commissioner of social services (state) commenced a support petition pursuant to General Statutes § 17-324 (transferred to §17b-745), § 46b-215 and/or § 46b-172, claiming that the defendant is legally liable as a parent of the child. The state applied to the family support magistrate assigned to the judicial district in IV-D support cases for support of the minor child on behalf of the plaintiff-mother. Pursuant to General Statutes § 46b-172 (c), the family support magistrate (Sosnoff-Baird, Magistrate) issued a summons for the defendant and ordered a show cause hearing to address the acknowledgment of paternity.
At the hearing on January 26, 2001, the family support magistrate appointed a guardian ad litem for the defendant. Shortly thereafter, the defendant filed a motion for genetic testing claiming, inter alia, that General Statutes § 46b-172 (a)(1)[1] violates the separation of powers clause of the Connecticut constitution. Specifically, the defendant challenged the portion of the statute that states that an acknowledgment of paternity, when executed, has the "same force and effect as a judgment CT Page 2650 of the Superior Court" and prohibits judicial ratification. The defendant claimed that the power to render a judgment is under the exclusive authority of the judiciary, and, therefore, the statute violates the separation of powers doctrine.
The state objected to the defendant's request for genetic testing. The state claimed that the family support magistrate had no authority to grant the defendant's request until the paternity acknowledgement was vacated. The state further argued that the defendant had not filed a motion to open and set aside the judgment of paternity as required for the magistrate to be able to vacate the acknowledgement. The magistrate did not have the authority to simply order genetic testing sua sponte
until it first opened the judgment of paternity pursuant to a motion to open. Cardona v. Negron, 53 Conn. App. 152, 157, 728 A.2d 1150 (1999).
The family support magistrate heard testimony on this issue of the defendant's motion for genetic testing on April 27, 2001, and September 14, 2001. At the hearings, the defendant proffered witnesses who testified to the defendant's execution of the paternity acknowledgment at the hospital, along with witnesses generally familiar with the defendant as a participant in the department of mental retardation (DMR) programs. A large portion of the testimony centered on the issue of whether the defendant had the mental capacity to understand his rights and make a voluntary acknowledgment of paternity.
Specifically, the defendant's mother and stepfather testified that they were at the hospital on the day that the defendant signed the paternity acknowledgment, and they were unsure whether he had actually read the document. The defendant's mother also testified that in the past, the defendant had signed documents without understanding them. Similarly, two other witnesses involved with the defendant through the DMR programs testified that the defendant has a sub-70 IQ and, as a result, has very limited ability to read and understand. These witnesses also testified that if requested, the defendant would sign any paper placed in front of him.
For the state, the plaintiff-mother testified that throughout her relationship with the defendant, the defendant acted normally, and he never told her that he was mentally challenged. The plaintiff-mother also testified that Elizabeth Bowers, an employee at the hospital in the "birth certificate register," spent about an hour with the defendant and her at the hospital after the child was born. According to the plaintiff-mother, Bowers explained the acknowledgment of paternity form to them, and the plaintiff-mother heard the defendant answer that he had read the form. Bowers testified about the procedures that she regularly CT Page 2651 follows when paternity forms are executed at the hospital, including procedures to allow the parties to have ample time to read and understand the form.
On January 7, 2002, the family support magistrate rendered a thirty-nine-page memorandum of decision granting the defendant's motion for genetic testing. In the decision, the family support magistrate found: that the portions of General Statutes § 46b-172 (a)(1) that state that a written acknowledgment and written affidavit sworn to by the putative father and the mother of the child "shall have the same force and effect as a judgment of the Superior Court" and "shall be considered a legal finding of paternity without requiring or permitting judicial ratification" are unconstitutional as they violate the separation of powers doctrine. Based on this finding, the magistrate then determined that the defendant lacked the capacity to waive his constitutional due process rights and granted his motion for genetic testing.
On April 4, 2002, the state filed a motion to vacate the determination of unconstitutionality with a supporting memorandum but did not challenge the other findings. On May 13, 2002, the court heard argument on the state's motion. Present at the argument were counsel representing the defendant, the minor child, the state and the guardian ad litem for the defendant. No other motions or objections have been filed.
 II LAW A
General Statutes § 46b-231 (n)(1) provides that "[a] person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section." See, e.g.,Cardona v. Negron, supra, 53 Conn. App. 155. "The test for determining whether a claimant is aggrieved by a particular decision is two-fold: (1) the party claiming to be aggrieved must have a specific, personal, and legal interest in the subject matter of the decision, and (2) the party must show that this personal and legal interest has been specially and injuriously affected by the decision." Newman v. Newman, 235 Conn. 82,103, 663 A.2d 980 (1995). Among the appeal powers vested to the superior court by this statute, the superior court "may reverse or modify the decision [of a family support magistrate] if substantial rights of the appellant have been prejudiced because the decision of the magistrate is . . . in excess of the statutory authority of the family support magistrate . . ." General Statutes § 46b-231 (n)(7)(B). CT Page 2652
The state, in its supporting memorandum, does not challenge that the magistrate properly set aside the acknowledgment of paternity on the ground that the defendant lacked the capacity to waive his constitutional due process rights; however, the state disputes the magistrate's finding that General Statutes § 46b-172 (a)(1) is unconstitutional. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) Shays v. LocalGrievance Committee, 197 Conn. 566, 571, 499 A.2d 1158 (1985). While the state has not withdrawn its support petition, given the final disposition of the magistrate's decision, any appeal by the state has likely been rendered moot for lack of aggrievement.
To avoid mootness, the state has therefore filed this motion to vacate the magistrate's constitutional determination, in an effort to avail itself of the only remedy it has to preserve its rights. See UnitedStates v. Munsingwear, Inc., 340 U.S. 36, 40, 71 S.Ct. 104, 95 L.Ed. 36
(1950) ("In this case the United States made no motion to vacate the judgment . . . It did not avail itself of the remedy it had to preserve its rights").
"Vacatur is commonly utilized . . . to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." (Internal quotation marks omitted.) In re Candace H., 259 Conn. 523, 527 n. 5,790 A.2d 1164 (2002); see United States v. Munsingwear, Inc., supra, 340 U.S. 41. "Vacatur is equitable relief, granted in those extraordinary cases in which the public interest would be served by that relief." Taftv. Wheelabrator Putnam, Inc., 255 Conn. 916, 917, 763 A.2d 1044 (2000) (McDonald, C. J., dissenting). "The court must consider the actions of the parties in determining if vacatur is appropriate." Id.; see U.S.Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 26-27,115 S.Ct. 386, 130 L.Ed.2d 233 (1994).
The state argues, persuasively, that it is a party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance. See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,supra, 513 U.S. 25. More importantly, the state argues that it brings thousands of petitions for support pursuant to General Statutes §46b-172 (a)(1), and to allow the magistrate's finding of unconstitutionality to stand would have a significant precedential effect on deciding similar challenges to the statute. The court agrees that the failure to address the magistrate's constitutional ruling is likely to CT Page 2653 cast a pall over General Statutes § 46b-172, leading to a greater likelihood of future challenges to the statute's constitutionality, and that the public interest warrants the court's review.[2]
 B
To reach the constitutional issue, the magistrate relied on Cardona v.Negron, supra, 53 Conn. App. 157, for the proposition that she lacks authority to grant a motion for genetic testing until the judgment of paternity is opened and set aside. According to the magistrate, because § 46b-172 (a)(1) provides that an acknowledgment of paternity, properly executed, "shall have the same force and effect as a judgment of the Superior Court" the defendant would have to file a motion to open and set aside the judgment of paternity in order to vacate the judgment. The defendant did not file a motion to open, rather, the defendant argued that General Statutes § 46b-172 (a)(1) is unconstitutional. Thus, the magistrate concluded that because no motion to open had been filed, she could not consider the defendant's motion for genetic testing unless the provisions of General Statutes § 46b-172 (a)(1) were found to be unconstitutional, and, therefore, she was required to address the defendant's constitutional claim.
The magistrate's conclusion raises the issue before this court as to whether a family support magistrate has the authority to declare a statute unconstitutional. "The courts of this state fall into two groups, those established by the constitution itself and those created by the General Assembly under authority granted in the constitution. Section 1 of article 5 of the constitution of 1818, carried over, virtually unchanged, into the constitutions of 1955 and 1965 [subsequently amended by article XX], provided as follows: `The judicial power of the state shall be vested in a supreme court of errors, a superior court, and such inferior courts as the general assembly shall, from time to time, ordain and establish: the powers and jurisdiction of which courts shall be defined by law.' Thus, the Supreme Court[,] [the Appellate Court] and the Superior Court are established by the constitution and may be referred to as constitutional courts, while all other courts . . . are established by the legislature and fall within the designation of `lower courts.'" (Emphasis added.) Adams v. Rubinow, 157 Conn. 150, 155-56, 251 A.2d 49
(1968).
"The Connecticut Family Support Magistrate's Act, General Statutes §§ 46b-231 through 46b-235, was first enacted in 1986 in response to federal legislation providing federal funds for states that complied with federal requirements for the expeditious enforcement of child support orders in cases arising under Title IV-D . . . The enactment of § CT Page 265446b-231 (d) created the family support magistrate division of the superior court for the purpose of the impartial administration of child and spousal support . . . This legislation was enacted to address the legislature's concern for the timely and effective collection of support payments arising out of child and spousal support rights under Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq." (Citations omitted; internal quotation marks omitted.) Sierra v. Lozada,31 Conn. App. 114, 117, 623 A.2d 1045 (1993). "The jurisdiction conferred by [the Family Support Magistrate's Act] is confined precisely to the kinds of cases that, although important to the parties, have limited jurisprudential significance for the development of the law." Perry v.Perry, 222 Conn. 799, 811, 611 A.2d 400 (1992), rev'd on other grounds.
The Family Support Magistrate's Act was enacted by the legislature pursuant to a federal directive, which the state was required to follow in order to receive federal funding.[3] Among the mandates of this directive was that the magistrates could not be judges. In a hearing before the judiciary committee on the proposed adoption of the bill, James G. Harris, commissioner of the department of human resources, stated, "the federal government will not pay for judges. The bill states that we are to set up a quasi-judiciary system, or an administrative system . . . [A]s far as judges are concerned, they will not pay." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1986 Sess., p. 1950. Later at the hearing, when concerns were voiced over the powers vested to the magistrates, one speaker stated that, "there are some very specific federal requirements for this quasi-judicial process. They're very specific. They say that this is all that [the magistrate] can do." Conn. Joint Standing Committee Hearings, supra, p. 158.
Thus, the Family Support Magistrate Division is a division of the Superior Court, created by statute for the limited purpose of the impartial administration of child and spousal support. See General Statutes § 46b-231 (d). The statutory powers of the family support magistrates are delineated in General Statutes § 46b-231 (m).[4]
Further, the magistrates' powers do not encompass all of the powers vested to constitutional courts. See, e.g., Correa v. Roane, Superior Court, judicial district of Hartford, Docket No. FA 01 0631685 (September 13, 2001, Lifshitz, F.S.M) ("The Family Support Magistrate is not a Judge of the Superior Court and does not have full judicial powers . . . The judicial powers of the Family Support Magistrate are limited to those established by the General Assembly in the Family Support Magistrate's Act, General Statutes § 46b-231, and related sections and public acts . . . Unlike a judge of the Superior Court, the powers of a Family Support Magistrate to enforce support orders are wholly statutory." (citations omitted; internal quotation marks omitted)); Morrison v.CT Page 2655Lindberg, Superior Court, judicial district of Hartford, Docket No. FA 00 0630392 (November 13, 2000, Langley, F.S.M.) (28 Conn.L.Rptr. 611, 612) ("Unlike a Superior Court Judge, a family support magistrate is not vested with equitable powers . . . Therefore, a family support magistrate may only act pursuant to powers provided for by statute and not based on principles of equity" (citations omitted; internal quotation marks omitted)).
The Family Support Magistrate Division is a quasi-judicial entity established by the legislature, as defined by General Statutes §46b-231 (b) which states in relevant part, "Family Support Magistrate Division means a division of the Superior Court created by this section . . . utilizing quasi-judicial proceedings." (Internal quotation marks omitted.) While the statute vests the family support magistrates with numerous powers and duties, no provision in the statute provides that a magistrate has the authority to rule on the constitutionality of a statute. Similarly, the Supreme Court has determined that other quasi-judicial bodies, such as arbitrators, do not have the authority to decide issues of facial constitutionality. Caldor, Inc. v. Thornton,191 Conn. 336, 344, 464 A.2d 785 (1983).
Thus, the power to decide issues of facial constitutionality has been distinguished from other constitutional determinations made by quasi-judicial bodies, and it is clearly a power that is greater than the power to determine other constitutional questions such as the right of due process. See Caldor, Inc. v. Thornton, supra, 191 Conn. 344-45 n. 6 ("We reserve for another day the extent to which an arbitrator may have authority to determine constitutional questions, such as the due process implications of challenged procedures, which do not attack a statute as being unconstitutional on its face"). Additionally, the Connecticut Supreme Court has declined to address the question of the constitutionality of a family support magistrate's exercise of authority greater than that vested under General Statutes § 46b-231 (m). SeePerry v. Perry, supra, 222 Conn. 809[5] ("We expressly reserved . . . the question of the constitutionality of a family support magistrate's exercise of greater authority under General Statutes § 46b-231
(m)"); DiBerardino v. DiBerardino, 213 Conn. 373, 378, 568 A.2d 431
(1990) ("we leave for another time a determination of the constitutionality of § 46b-231 (m)(4) when a family support magistrate exercises greater authority"). The scope of powers vested to the family support magistrates by the statute, however, has been criticized. See Perry v. Perry, supra, 222 Conn. 818 (Berdon, J. dissenting) ("[W]e deal with a statute that confers on family support magistrates, who are not appointed in accordance with the state constitution, the open-ended power to deprive a person of his liberty . CT Page 2656 . . Clearly, it is a judicial power to be exercised only by a constitutional judge").
Moreover, even constitutional courts should refrain from declaring statutes unconstitutional when unnecessary. The Supreme Court has always "eschew[ed] unnecessary determinations of constitutional questions." (Internal quotation marks omitted.) Stamford Hospital v. Vega,236 Conn. 646, 663, 674 A.2d 821 (1996). For example, the Supreme Court declined to address a trial court's holding that a statute of limitations relevant to the commencement of paternity actions was unconstitutional. In Moore v. McNamara, 201 Conn. 16, 20-21, 513 A.2d 660 (1986), the court held that it "has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case . . . The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity . . . Appropriate deference to a coordinate branch of government exercising its essential functions demands that [a court] refrain from deciding constitutional challenges to its enactments until the need to do so is plainly evident." (Citations omitted; internal quotation marks omitted.). Thus, "[i]n the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face . . . [C]onstitutional issues do not exist in a vacuum . . . The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." (Citations omitted; internal quotation marks omitted.) Bell Atlantic Mobile, Inc. v. Dept. of Public Utility Control,253 Conn. 453, 490, 753 A.2d 361 (2000).
 C
The Family Support Magistrate Division is a creature of statute and not a constitutional court. As envisioned by the legislature and the constitution, the powers vested in this lower court do not extend to the full powers of constitutional courts. Accordingly, this court finds that the magistrate did not have the authority to address the issue of the facial constitutionality of General Statutes §§ 46b-172 (a)(1), an authority that lies exclusively under the control of the constitutional courts. Moreover, even if the magistrate did have the authority to address this issue, the court finds that the necessity of the situation before the magistrate was insufficient to require the magistrate to address the constitutional question.
The court, therefore, finds that the magistrate should have sustained the state's objection to the defendant's motion for genetic testing and directed the defendant to file the requisite motion to open and set aside CT Page 2657 the judgment.[6] See Cardona v. Negron, supra, 53 Conn. App. 157. Despite this, the magistrate held a full evidentiary hearing on the issue of capacity, and the issue was ultimately resolved on grounds other than the constitutional claim, to which the state does not object. This issue is therefore moot.
Because of the likelihood of future challenges to the statute's constitutionality, however, the court finds that vacatur is appropriate with respect to the magistrate's constitutional determination. Accordingly, in the interest of the public, the state's motion to vacate the family support magistrate's determination that General Statutes § 46b-172 (a)(1) is unconstitutional, is granted.
Swienton, J.