CONNECTICUT ASSOCIATED BUILDERS AND
CONTRACTORS ET AL. *v.* THEODORE
ANSON, COMMISSIONER OF
PUBLIC WORKS
(SC 16047)

Callahan, C. J., and Borden, Berdon, McDonald and Peters, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued April 28—officially released November 16, 1999

*Eliot B. Gersten*, with whom were *George J. Kelly, Jr.*, and, on the brief, *Edward F. O'Donnell, Jr.*, for the appellants (plaintiffs).

*Richard Blumenthal*, attorney general, with whom were *George E. Finlayson*, assistant attorney general, and, on the brief, *Clare E. Kindall* and *Cornelius F. Tuohy*, assistant attorneys general, for the appellee (defendant).

*Christopher J. Hug*, with whom, on the brief, was *Scott E. Perry*, for the appellee (intervening defendant).

*Donald P. Creston* and *Jan S. Amundson, Quentin Riegel, Stephen A. Bokat, Robin S. Conrad* and *Sussan Mahallati-Kysela*, pro hac vice, filed a brief for the

National Association of Manufacturers et al. as amici curiae.

*Opinion*

PETERS, J. The principal issue in this case is whether a trade association representing nonbidders on a government building project has standing to challenge, on philosophical grounds, the terms of the contract between the state and the successful bidder. Specifically, the association, on behalf of its members, disputes the validity of a construction contract that incorporates a project labor agreement, an agreement that requires contractor compliance with the provisions of collective bargaining agreements and, in return, requires project workers not to strike while the project is under construction. The association represents contractors that, as a matter of philosophy and business practice, favor the use of nonunion labor and therefore eschew submitting bids for any project including a project labor agreement. The association claims that it has made a sufficient showing of impairment of its members' constitutional rights to freedom of speech and freedom of association to advance their shared goal so that it has the standing necessary to challenge the validity of the project labor agreement. We disagree and, accordingly, affirm the judgment of the trial court dismissing the plaintiffs' complaint.

The plaintiffs, Connecticut Associated Builders and Contractors (association), All Electric, Inc.,[1] and Electric Contractors, Inc., brought this action against the defendant, Theodore Anson, the commissioner of public works (commissioner), and the intervening defen-

---

[1] The plaintiffs also included John Schleifer, an employee of All Electric, Inc., suing as an individual and a taxpayer. The trial court concluded that he lacked standing to challenge the bidding process. The plaintiffs' appellate brief contains no argument in support of Schleifer's standing as an individual or a taxpayer.

dant, Fusco Corporation (Fusco),[2] to enjoin the construction of an office and classroom building and a parking garage at Central Connecticut State University (project). In their amended complaint, the plaintiffs alleged that the commissioner's inclusion of project labor agreement terms as a condition of a bid on the project: (1) violated the competitive bidding requirements contained in General Statutes §§ 4b-91 through 4b-96,[3] by failing to authorize an award to the "lowest responsible and qualified general bidder" as specified in General Statutes § 4b-92;[4] (2) exceeded the commissioner's authority under the same competitive bidding statutes, or rendered those statutes unconstitutionally vague; and (3) impaired the plaintiffs' constitutional rights, under both the federal and the state constitutions, to freedom of speech and association.

The commissioner moved to dismiss the plaintiffs' complaint on the ground of sovereign immunity. That motion was denied. After having been granted the status of intervening defendant, Fusco filed special defenses and moved to dismiss the complaint on the ground that

[2] The trial court permitted Fusco to intervene after it had become the successful bidder on the project. The court did not permit intervention by the Connecticut State Building and Construction Trades Council,which has not pursued an appeal in this court.

[3] General Statutes § 4b-91 provides in relevant part that, except as otherwise stated: "(a) Every contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building for work by the state, which is estimated to cost more than two hundred fifty thousand dollars . . . shall be awarded to the lowest responsible and qualified general bidder on the basis of competitive bids in accordance with the procedures set forth in this chapter . . . ."

[4] General Statutes § 4b-92 provides in relevant part: "As used in this chapter and except as otherwise provided, the words 'lowest responsible and qualified bidder' shall mean the bidder whose bid is the lowest of those bidders possessing the skill, ability and integrity necessary to faithful performance of the work based on objective criteria considering past performance and financial responsibility. Essential information in regard to such qualifications shall be submitted with the bid in such form as the awarding authority may require by specification in the bid documents and on the bid form. . . ."

the plaintiffs lacked standing to raise their challenges to the validity of the project labor agreement.[5] The commissioner joined Fusco's motion to dismiss for lack of standing.

With the agreement of the parties, the trial court held an evidentiary hearing on the motion to dismiss that addressed not only the merits of the motion to dismiss but also the merits of the plaintiffs' amended complaint. The trial court dismissed the plaintiffs' claims for lack of standing, but, in so doing, addressed the substantive merits of at least some of their claims.

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

I

At the outset, in the interests of clarity, it is useful to take note of those issues that do not require elaboration in this appeal. For differing reasons, we may dispose summarily of issues concerning the merits of some parts of the plaintiffs' complaint and the standing of some of the plaintiffs.

A

The first two counts of the plaintiffs' amended complaint alleged that the commissioner had violated statutory competitive bidding requirements, or, in the alternative, had assumed authority that the competitive bidding statutes lawfully could not have conferred upon him. The trial court may have been alluding to those counts in the complaint when, in its memorandum of decision, the court concluded that "the decision to try

[5] Fusco also claimed that the issues raised by the plaintiffs were political questions beyond the jurisdiction of the court. That issue is not before us.

a [project labor agreement] on this project was a legitimate exercise of [the department's] discretion . . . ." The trial court noted, in addition, that the commissioner's decision was not "based on any improper motive." In its memorandum of decision, the court did not make any further findings, or arrive at any express conclusions of law, with respect to counts one or two.

In their appeal, the plaintiffs have not challenged the validity of the trial court's implicit substantive conclusion with respect to their expressly statutory claims. Their brief adverts to the statutes only once, in the introductory recitation of the contents of their complaint.[6] Thereafter, although the plaintiffs deplore the public interest implications of the use of project labor agreements and the implementation of project labor agreements through the competitive bidding process, their policy analysis includes no reasoned analysis of the statutes identified in their complaint. Specifically, they have not pursued effectively, on appeal, any claim that the commissioner violated the statutory prescriptions contained in our competitive bidding statutes or any claim that those statutes have any constitutional infirmity.[7] Accordingly, the merits of counts one and

[6] The plaintiffs' brief and the belated references to the statutes in their reply brief do not contain the reasoned analysis that would have been required to sustain such a claim.

[7] The trial court had addressed these issues, in some detail, in its memorandum of decision denying the commissioner's motion to dismiss the complaint on grounds of sovereign immunity. The court noted the plaintiffs' claim, in count one, that inclusion of a project labor agreement requirement in government contract specifications demonstrated favoritism toward unions. It referred to the plaintiffs' contention, in count two, that the competitive bidding statutes did not expressly authorize use of a project labor agreement and that, if they did so impliedly, such authorization would constitute an unconstitutional delegation of legislative authority. It also determined that the plaintiffs' complaint, under count three, contained sufficient factual allegations to support their constitutional cause of action under the first and fourteenth amendments to the United States constitution. Properly, the court did not assess the merits of the three count complaint, concluding only that the plaintiffs' claims required further factual exploration and documentation.

two of the plaintiffs' complaint are not before us on this appeal.

## B

The plaintiffs All Electric, Inc.,[8] and Electric Contractors, Inc., are not general contractors, but subcontractors. They maintain that the trial court improperly denied them standing to challenge the merits of the commissioner's use of a project labor agreement as one of the specifications for contract bids on the project by general contractors. We agree with the trial court's ruling that they have no standing.

Although, on appeal, the subcontractors have vigorously pursued their claim of standing, they cannot be afforded the relief that they seek in light of today's companion decision in the case of *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 740 A.2d 813 (1999). Therein, we explain that subcontractors have no standing to pursue a challenge to general bid specifications because, in their own capacity, they never can bid directly for government projects. Their preclusion from the bidding process has no relationship to whether they operate union shops, or whether they are opposed philosophically to union shops. Their preclusion stems from the nondiscriminatory and uncontested industry practice of limiting bidding to general contractors. If general contractors were indeed to incur higher costs because of project labor agreement contract specifications, an allegation that the commissioner disputes, the possible economic consequences of increased costs attributable to potential subcontractors are too speculative and too attenuated

---

[8] The plaintiff John Schleifer, an employee of All Electric, Inc., suing as an individual, shares the standing problem that requires dismissal of the claims of his employer. His interest as a person asserting a right to freedom of association does not give him standing to invalidate the bidding process, as we discuss in part II of this opinion.

to constitute "some direct injury" for the purposes of conferring standing on such subcontractors.[9] See *Maloney* v. *Pac*, 183 Conn. 313, 320–21, 439 A.2d 349 (1981).

## II

The principal issue that is not resolved by the companion case is whether a philosophical disinclination to deal with unions gives a nonbidding general contractor on a government project, or an association representing such nonbidders, the standing to challenge the specifications of a bidding process that incorporates a project labor agreement. The association contends that, as a representative of both general contractors and subcontractors, it has constitutional standing to represent the interests of its membership in litigating a challenge to the validity of project labor agreement requirements articulated in count three of the plaintiffs' complaint.

A trial court's determination that it lacks subject matter jurisdiction because of a plaintiff's lack of standing is a conclusion of law that is subject to plenary review on appeal. *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410, 722 A.2d 271 (1999). We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous. See, e.g., *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

It is undisputed that both federal and state law authorize an association, under designated circumstances, to bring an action on behalf of its members. "This court has recognized representational standing in accordance with the holdings of the United States Supreme Court. [A]n association has standing to bring suit on behalf of

---

[9] This conclusion applies as well to the claims of the plaintiff John Schleifer as an employee of All Electric, Inc. See footnote 1 of this opinion.

its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. [*Hunt* v. *Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)]. . . . *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, 199 Conn. 609, 616, 508 A.2d 743 (1986). . . . [T]he propriety of accepting [r]epresentational standing depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. . . ." (Internal quotation marks omitted.) *Connecticut Assn. of Not-For-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 386–87, 709 A.2d 1116 (1998); *Connecticut Business & Industry Assn.* v. *Commission on Hospitals & Health Care*, 218 Conn. 335, 345, 589 A.2d 356 (1991).

As often is the case, what is at issue is not the principle but its application. In particular, we must decide whether any association member has standing to challenge, that is to say has been "actually injured," by the commissioner's decision to use a project labor agreement for the project.

The record reveals the following. No plaintiff in this case submitted a bid to the commissioner to undertake the performance of the project. No member of the association submitted such a bid, although two of its members testified, without contradiction, that the project labor agreement requirement deterred them from doing so. The commissioner presented evidence, again without contradiction, that a majority of the bidders on the project, five out of nine, were nonunion shops.

The gravamen of the association's position is the following. In accordance with the recognized principle of representational standing, the association claims that it has standing to obtain judicial injunctive relief to remedy any injury caused to its members. Its members are contractors and subcontractors that are nonunion. As a matter of philosophy and business practice, the members of the association do not enter into contracts with construction unions. On behalf of its members, the association claims standing to pursue the third count in the plaintiffs' complaint, which alleges that the imposition of a project labor agreement requirement impairs its members' constitutional rights to freedom of association and of speech.[10] According to the association, that impairment arises from the fact that its members cannot bid on contracts containing a project labor agreement requirement without undermining their associational commitment to nonunion hiring. In effect, the association argues, its members are in the same position as the nonbidders in *Unisys Corp.* v. *Dept. of Labor*, 220 Conn. 689, 694–95, 600 A.2d 1019 (1991), in that they were precluded from bidding because they could not comply with a contract specification that favored some potential bidders over others. We are not persuaded.

The defendants assert that we need not reach the merits of the association's standing claim because the trial court, in its memorandum of decision granting the motion to dismiss, did not address directly the constitutional argument that the association has raised on appeal. Concededly, the plaintiffs made no effort to seek clarification from the trial court in the form of a motion for articulation. See Practice Book § 66-5. The defendants remind us of our often repeated admonition

---

[10] We may presume that the plaintiffs rely on the rights under the first amendment to the federal constitution. They have advanced no claim under the state constitution in their arguments on appeal.

that appellate review, even of issues that have constitutional dimensions, is predicated upon an appropriate record at trial. Practice Book § 61-10; *Lopiano* v. *Lopiano*, 247 Conn. 356, 372, 752 A.2d 1000 (1998); *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 376, 568 A.2d 431 (1990).

Viewing the record as a whole, however, we are persuaded that it provides us with a sufficient basis upon which to determine the merits of the association's standing claim. It makes sense to read the court's October, 1998 memorandum of decision granting the motion to dismiss for lack of standing in light of the court's July 30, 1998 memorandum of decision denying the commissioner's motion to dismiss on grounds of sovereign immunity.

On July 30, 1998, the trial court issued a detailed memorandum of decision to support its conclusion that the plaintiffs' complaint included sufficient factual allegations to justify an evidentiary hearing to determine the merits of their action against the commissioner. On that occasion, the court addressed, with some particularity, each of the three counts of the plaintiffs' complaint. See footnote 7 of this opinion. The commissioner had argued to the court that the allegations contained in the third count of the plaintiffs' complaint were too insubstantial to prevail over a claim of sovereign immunity. Citing *Abood* v. *Board of Education*, 431 U.S. 209, 237, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977), the court rejected that argument and concluded, instead, that the plaintiffs' claim should not be dismissed on its face.

The trial court framed the relevant issue with respect to the third count in a manner that is significant for the issue now before us. The court noted: "The allegations in count three are consistent with those upheld in *Abood*. If proven, they show that in order to be eligible

to bid on this public works project, the plaintiff contractors would be required to use union workers and collect money to support a broad range of union activities inimical to their political beliefs, and nonunion workers would be required to contribute money to support ideological expenditures unrelated to collective bargaining. *The allegations* of count three establish a claim of an infringement on the plaintiffs' rights of free speech and association." (Emphasis added.)

When the trial court issued the memorandum of decision dismissing the plaintiffs' claims for lack of standing, it presumably was familiar with the relevant criteria for represenational standing under count three that it had articulated only a few months earlier in its July 30, 1998 decision. Although it made no express finding that the association had satisfied its burden under *Abood,* the findings that it did make demonstrate that the association had failed to meet its burden of proof.

The trial court found that the association "has not shown the existence of favoritism, fraud or corruption in the bidding process, and therefore does not have standing to challenge the use of the [project labor agreement]." As we have stated in today's companion case, *Connecticut Associated Builders & Contractors* v. *Hartford,* supra, 251 Conn. 181, these are the proper criteria to determine standing for nonbidders challenging allegedly burdensome conditions in government contract specifications.

The court further stated that inclusion of a project labor agreement requirement in the project specifications was justified by the legitimate public interest in completion of "a public works project within time and financial constraints." The nonstrike clause contained in project labor agreements would further that interest. The commissioner's decision to use a project labor agreement was not based "on any improper motive."

The court determined that "[t]he state has a legitimate interest in completing a public works project within time and financial constraints. Evidence showed that the commissioner decided to use the [project labor agreement] on this project based on knowledge of the use of [project labor agreements] by other public entities. The plaintiffs did not present any evidence that the [project labor agreement] was a means to exclude nonunion contractors or amounted to such an exclusion. The purpose of the competitive bidding statutes is not to aid the contractors by making it economically feasible for all to bid, but to promote the public interest in the efficient completion of public works projects. . . . The state's interest in its own finances when undertaking public works projects takes precedence over the finances or business methods of individual contractors. . . . The commissioner's decision to try a [project labor agreement] on this project was a legitimate exercise of his discretion to find a way to achieve the state's goal while remaining within the bounds of the competitive bidding statutes." (Citations omitted.)

It is impossible to reconcile these findings with any conclusion other than that the association failed to establish that the use of a project labor agreement, under the circumstances of this case, constituted an infringement of the constitutional rights of its members. The constitution is not violated simply because a public agency adopts a legitimate public policy that runs counter to the philosophical views or business practices espoused by the membership of the association. The association did not make the evidentiary showing for standing that was its burden to make.

The plaintiffs argue, however, that "[w]hile it is true that the court in this earlier ruling [on sovereign immunity] necessarily accepted the allegations as true, nothing at the subsequent hearing refuted those allegations. In fact, the evidence at the hearing confirmed, in all

relevant respects, the plaintiffs' allegations." The principle that the plaintiffs invoke is inapplicable in this case. Without any allegation or preliminary showing of invidious discrimination based on factors such as race; see, e.g., *Adarand Constructors, Inc.* v. *Pena*, 515 U.S. 200, 211, 115 S. Ct. 2097, 132 L. Ed. 2d 158 (1995); the defendants had no burden of proof. The trial court properly so held. We cannot supply for the plaintiffs a factual finding that the trial court did not make.[11]

The trial court properly concluded that neither the association nor any other plaintiffs in this case had made an evidentiary showing sufficient to establish their claimed right to standing to challenge the validity of the commissioner's use of a project labor agreement for the project. We conclude that the trial court's findings were not clearly erroneous and that its legal conclusions were proper.

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN, J., concurred.

BERDON, J., with whom MCDONALD, J., joins, dissenting. The sole issue before this court is whether the plaintiffs have standing. In my view, the plaintiffs Connecticut Associated Builders and Contractors (association), All Electric, Inc., and Electrical Contractors, Inc., have standing to challenge the requirement that a bidder must agree to a project labor agreement similar to the one discussed in the companion case, *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 740 A.2d 813 (1999).

The trial court acknowledges the following: "The plaintiffs presented testimony from representatives of

---

[11] As the defendants observe, the plaintiffs' evidentiary showing at trial did not even include the preexisting collective bargaining agreements that were incorporated into the project labor agreement actually used by the commissioner for this project.

two nonunion general contractors, Thomas Haynes, vice president of Haynes Construction Company, and Michael Kolakowski, president of Konover Construction Company. Both . . . are members of [the association]. They testified that this project was the type of project their companies would usually bid on but they decided not to submit a bid because of the project labor agreement requirement. They claim that the project labor agreement requirement makes it economically infeasible for them to bid on the project because they would not be able to use their own workforce. They claim that this puts them at a disadvantage in the bidding, and is the type of inequity the competition bidding statutes prohibit because it interferes with open competition." In my view, the foregoing is sufficient to create representational standing for the association. See *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 386, 709 A.2d 1116 (1998) (adopting federal test for representational standing); see also *Connecticut Associated Builders & Contractors* v. *Hartford*, supra, 251 Conn. 183–84; id., 198–201 (*Berdon, J.,* dissenting). For the reasons I have stated previously in my dissent in *Connecticut Associated Builders & Contractors* v. *Hartford*, supra, 197–98, I believe the subcontractor plaintiffs All Electric, Inc., and Electrical Contractors, Inc., also have standing.

Accordingly I dissent.

MCDONALD, J., dissenting. I join in Justice Berdon's dissent.

The majority today concludes that the plaintiffs have no standing to question the constitutionality of a clause in a public construction contract that contains a project labor agreement[1] requiring any employees on the construction project to be members of a union. The plaintiffs are the Connecticut chapter of a trade association

---

[1] The project labor agreement subjects all contractors to, inter alia, the terms of collective bargaining agreements, regardless of whether they have previously been parties to those agreements. The project labor agreement

of contractors and subcontractors, two Connecticut subcontractors that are members of the association and an employee of one of those subcontractors, all of whom were capable of engaging in the construction project and ready to do so save for the project labor agreement requirement. The plaintiffs claim to oppose union involvement in labor management relations. They oppose collecting money from nonunion workers to support causes to which the plaintiffs and those workers object, and they view the project labor agreement as forcing such involvement in violation of their federal constitutional right to freedom of association. I would hold that each plaintiff has standing to enter the courtroom and present those claims.

According to the majority, the plaintiffs do not have standing because they have failed to allege a violation of the Connecticut competitive bidding statute. That statute is irrelevant, in my view, to the issue of standing to present this claim of constitutional violation for adjudication. To have standing to sue, a plaintiff must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the

provides in relevant part: "Article III. Union Recognition and Employment. Section 1. The Contractor recognizes the Union as the sole and exclusive bargaining representative of all craft employees working on facilities within the scope of this Agreement. Section 2. Applicants for various classifications covered by the Agreement required by the Contractor on the Project shall be referred to the Contractor by the Local Union. The Contractor may bring ten percent (10%) of his workforce to the Project without utilizing the Local Union referral procedures. The Contractor shall have the right to determine the competency of all employees, the right to determine the number of employees required, and shall have the sole responsibility for selecting the employees to be laid off consistent with Article IV, Section 3, below and the attached Schedule A's. The Contractor shall also have the right to reject any applicant referred by the Local Union, subject to the show-up payments required in the applicable Schedule A. . . . Section 4. All employees covered by this Agreement shall be subject to the union security provisions contained in the applicable Schedule A. . . ."

court so largely depends for illumination of difficult constitutional questions . . . ." *Baker* v. *Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); see also *Gollust* v. *Mendell*, 501 U.S. 115, 125, 111 S. Ct. 2173, 115 L. Ed. 2d 109 (1991); *Franchise Tax Board of California* v. *Alcan Aluminum Ltd.*, 493 U.S. 331, 335, 110 S. Ct. 661, 107 L. Ed. 2d 696 (1990); *Los Angeles* v. *Lyons*, 461 U.S. 95, 101, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). This court has stated that "[s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Citations omitted; internal quotation marks omitted.) *Unisys Corp.* v. *Dept. of Labor*, 220 Conn. 689, 693, 600 A.2d 1019 (1991). The plaintiffs here have demonstrated such a personal stake that would assure concrete adverseness in advocating the issues arising under the merits of their claim.

In *Northeastern Florida Chapter of the Associated General Contractors of America* v. *Jacksonville*, 508 U.S. 656, 666, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993), the United States Supreme Court stated, "[t]o establish standing . . . a party challenging a set-aside program[2] like Jacksonville's need only demonstrate that it is able

[2] The Jacksonville ordinance in question required that a certain percentage of the amount of money spent on city contracts each year be set aside for "minority business enterprises."

and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." The court later characterized its holding in that case to be that "a denial of a benefit in the bargaining process can itself create an Article III injury [one justiciable in federal court], irrespective of the end result." *Clinton* v. *New York*, 524 U.S. 417, 433 n.22, 118 S. Ct. 2091, 141 L. Ed. 2d 393 (1998).

While the present case does not present an equal protection claim, the principles underlying the standing analysis in the equal protection cases are applicable to the plaintiffs' freedom of association claim. The contractor members of the association allege, as do the subcontractors and employees, that the state, through the project labor agreement, is forcing an unwanted association upon them by requiring 90 percent of the employees on the project to be union members in violation of the first amendment to the United States constitution. "[A]t the heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society one's beliefs should be shaped by his mind and his conscience rather than coerced by the State." *Abood* v. *Board of Education*, 431 U.S. 209, 234–35, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977). The alleged "injury in fact" here is a violation of the plaintiffs' free association rights resulting from the imposition of the project labor agreement requirement in the bidding process. The plaintiffs have demonstrated that they are able and ready to bid on the project, and they claim that the unconstitutional requirements of the project labor agreement prevent them from doing so. I can think of no other parties that would be better suited to challenge the constitutionality of these requirements than these plaintiffs. I therefore conclude that the plaintiffs have established standing to pursue their freedom of association claim. I, of course, do not reach the merits of the plaintiffs' claims as set out in

their complaint, but would leave that to the trial court, after the plaintiffs have had their day in that court.

Accordingly, I respectfully dissent.