BASIL E. KEISER *v.* ZONING COMMISSION OF THE TOWN OF REDDING ET AL.
(AC 19681)

Schaller, Dranginis and Bishop, Js.

Argued April 30—officially released October 1, 2002

*Nancy Burton,* for the appellant (plaintiff).

*Michael N. LaVelle,* for the appellee (named defendant et al.).

*Opinion*

SCHALLER, J. This case comes to us on remand from our Supreme Court for reconsideration in light of the

Supreme Court's decision in *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 788 A.2d 1158 (2002) (en banc). In accordance with the remand; *Keiser* v. *Zoning Commission*, 259 Conn. 921, 791 A.2d 568 (2002); we must address the issue of whether, under the dictates of *Nizzardo*, the plaintiff, Basil E. Keiser, had standing to intervene in the proceedings of the zoning commission of the town of Redding (zoning commission).

We first set forth the facts and procedural history, as stated in *Keiser* v. *Zoning Commission*, 62 Conn. App. 600, 771 A.2d 959 (2001). This case began when the defendants, Gilbert and Bennett Manufacturing Company and the water pollution control commission of the town of Redding (pollution control commission), jointly filed an application with the zoning commission for a special permit and site plan approval for the construction of a wastewater treatment facility on land owned by Gilbert and Bennett Manufacturing Company. Id., 602. The zoning commission scheduled a hearing to consider the application and, subsequently, the plaintiff filed a notice of intervention pursuant to General Statutes § 22a-19 (a).[1] Id. The plaintiff alleged in his notice of intervention that the wastewater treatment facility would have a detrimental impact on the environment. Id., 602–603. At the zoning commission hearing, the plaintiff testified that the building site was contaminated with cinder fill and that any disturbance would cause hazardous materials to be released into the Norwalk River, which abutted the proposed site. Id., 603. The zoning commission disagreed and approved the special permit and site plan. Id.

---

[1] General Statutes § 22a-19 (a) provides in relevant part: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law . . . any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

The plaintiff appealed from the zoning commission decision to the trial court. Id. The court, however, determined that the plaintiff lacked statutory standing under § 22a-19 (a) as well as classical standing to appeal from the zoning commission's decision. Id. Despite its standing determination, the court went on to conclude that "even if the plaintiff had standing, he could not prevail on the merits of his claim because there was substantial evidence supporting the zoning commission's decision." Id. The plaintiff appealed to this court, claiming that the trial court improperly concluded that he did not have statutory standing under § 22a-19 (a). Id. We agreed with the plaintiff, reversed the court's judgment and remanded the case for a hearing on the merits. Id., 603–604. We declined, however, to review the court's decision on the merits because we concluded that once the trial court determined that the plaintiff did not have standing, it did not have authority to decide the case. Id., 602 n.2. We therefore stated that the court's decision on the merits was null and void, and that we could not review a nullity. Id.

The zoning commission and the pollution control commission filed a petition for certification to appeal from our decision to the Supreme Court. The petition challenged our determination that we could not review the trial court's decision on the merits. The Supreme Court granted the defendants' petition and, in the same order, remanded the matter to us for reconsideration in light of its holding in *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 131. *Keiser* v. *Zoning Commission*, supra, 259 Conn. 921. Specifically, the remand stated that "[t]he petition for certification by the defendants, the zoning commission of the town of Redding and the water pollution control commission of the town of Redding, for appeal from the Appellate Court, 62 Conn. App. 600 (AC 19681), is granted. The case is remanded to the Appellate Court for reconsideration

in light of this court's decision in *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 788 A.2d 1158 (2002)." *Keiser* v. *Zoning Commission*, supra, 259 Conn. 921.

In *Nizzardo*, our Supreme Court determined that § 22a-19 (a) permits a party to intervene in an administrative proceeding to raise environmental issues when two conditions are met. First, the *Nizzardo* court concluded that "§ 22a-19 grants standing to intervenors to raise only those environmental concerns that are within the jurisdiction of the particular administrative agency conducting the proceeding into which the party seeks to intervene." *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 148. Second, the *Nizzardo* court determined that to qualify as a "verified pleading" under § 22a-19, a petition must "contain specific factual allegations setting forth the environmental issue that the intervenor intends to raise." Id., 164–65. The Supreme Court further stated that "[t]he facts contained therein should be sufficient to allow the agency to determine from the face of the petition whether the intervention implicates an issue within the agency's jurisdiction." Id., 165. "By requiring that intervention petitions under § 22a-19 allege facts setting forth the environmental claim that the intervenor intends to raise, we ensure that the agency will have the ability to determine upon a review of the petition whether the agency properly has jurisdiction over that environmental issue." Id., 164.

In light of our Supreme Court's remand and the *Nizzardo* decision, we directed the parties in the present case to address in supplemental briefs and at oral argument whether *Nizzardo* has any impact on the present case. The plaintiff argues that he has met both of the conditions set forth in *Nizzardo*. He argues that unlike the notice of intervention in *Nizzardo*, which was ruled insufficient to establish standing; id.,161; his notice contained specific factual allegations that set forth the envi-

ronmental issues he intended to raise. He also contends that in contrast to the state traffic commission in *Nizzardo*, which was determined not to have jurisdiction to consider environmental concerns; id., 165; the zoning commission in the present case has jurisdiction to consider the environmental concerns that he raised. The zoning commission argues that the application of *Nizzardo* to the present case requires us to conclude that the plaintiff does not have standing. It contends that the plaintiff's notice did not meet the "verified pleading" standard articulated in *Nizzardo* and, even if the notice was sufficient, the zoning commission did not have jurisdiction to consider the environmental issues raised.

We first set forth our standard of review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 870, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). "A trial court's determination that it lacks subject matter jurisdiction because of a plaintiff's lack of standing is a conclusion of law that is subject to plenary review on appeal."[2] *Connecticut Associated Builders & Contractors* v. *Anson*, 251 Conn. 202, 209, 740 A.2d 804 (1999).

In accordance with *Nizzardo*, we first assess whether the zoning commission has jurisdiction over any environmental issues. After a thorough review of the zoning regulations, we conclude that the zoning commission does have such jurisdiction. Specifically, the regulations refer to environmental concerns in § 5.1, which is entitled Permitted Special Uses, § 5.2, which is entitled Site

---

[2] We note that although standing and jurisdiction have been at issue throughout the procedural history of the present case, we review the question of whether the plaintiff has standing apart from any previous decisions because the standing question has not been decided previously using the *Nizzardo* test. Nonetheless, the standard we have articulated still is applicable.

Plans, and § 5.3, which is entitled Environmental Protection Standards.

Section 5.1.1 discusses the special permit application and in subdivision (b) requires in relevant part the submission of "[a] complete site plan, as detailed in section 5.2. The foremost objective in site development shall be protection of the natural . . . environment of the site, with emphasis on measures to control . . . water contamination . . . as [it] relate[s] to the surrounding area." The applicant also may be required, pursuant to § 5.1.1 (e), to submit "[s]upplementary data and expert studies . . . in any areas of concern related to protection of public health [and] safety . . . (such as . . . environmental impact evaluations)." Section 5.1.3 (b) refers to required findings that the zoning commission must make to grant a special permit and provides that before any special permit is granted, the commission must determine, among other things, that "[t]he location of the site, and the location, nature, size and intensity of proposed buildings . . . uses and activities . . . will not impair the . . . natural environment of the nearby area . . . ." Section 5.1.3 (d) requires that the "[s]tandards for environmental protection [in § 5.3] will be fully met." Moreover, § 5.1.5 discusses conditions of approval for a special permit and provides in relevant part that "the Commission may modify a proposed site plan, or limit proposed uses . . . or establish other conditions of approval necessary to protect health, safety . . . or natural environment . . . in granting a special permit. . . ."

Section 5.2 addresses site plans for nonresidential uses and makes reference to environmental concerns. In § 5.2.4 (c), which deals with standards for approving site plans, the regulation provides in relevant part that site plans shall comprise a layout designed to protect public health and safety, with specific respect to "envi-

ronmental protection, including controls on hazardous discharges . . . ."

Finally, § 5.3, entitled Environmental Protection Standards, provides in its introduction that "[t]he following standards apply to all Zones and are intended to supplement relevant Federal, State and local codes . . . ." Section 5.3.1 subsequently provides in relevant part that "[a]ny use which results in contamination of air, ground, water or the natural environment, beyond the specific limits prescribed below is prohibited. . . ." Section 5.3.2 then specifically defines hazardous substances and further adds in subdivision (c) that "[i]n no instance may the discharge of hazardous substances to air, ground, or water exceed the allowable limits established and administered by the State of Connecticut Department of Environmental Protection, by the State Health Code, and by any applicable Town code or ordinance."

We conclude that those regulations place environmental concerns within the jurisdiction of the zoning commission. We also note that we construe the *Nizzardo* court's use of the term "jurisdiction," as used in the phrase "environmental concerns that are within the jurisdiction of the particular administrative agency conducting the proceeding"; *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 148; to mean that the agency has the power and authority to hear a case and to decide the issues raised. We reach that conclusion on the basis of *Tower* v. *Miller Johnson, Inc.*, 67 Conn. App. 71, 73–77, 787 A.2d 26 (2001), a case which addressed the workers' compensation commissioner's subject matter jurisdiction. We stated in *Tower* that "[j]urisdiction of the subject-matter is the *power* [*of the court*] *to hear and determine* cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has *the authority to adjudicate* a particular type of legal controversy. . . . It is a familiar principle that a court which exer-

cises a limited and statutory jurisdiction is without juris-
diction to act unless it does so under the precise
circumstances and in the manner particularly pre-
scribed by the enabling legislation. . . . This concept,
however, is not limited to courts. Administrative agen-
cies [such as the commission] are tribunals of limited
jurisdiction and their jurisdiction is dependent entirely
upon the validity of the statutes vesting them with
power and they cannot confer jurisdiction upon them-
selves. . . . We have recognized that [it] is clear that an
administrative body must act strictly within its statutory
authority, within constitutional limitations and in a law-
ful manner. . . . It cannot modify, abridge or other-
wise change the statutory provisions, under which
acquires authority unless the statutes expressly grant
it that power." (Emphasis added; internal quotation
marks omitted.) Id., 75.

We can discern no compelling reason not to apply
the definition of jurisdiction, as stated in *Tower*, to
the present zoning commission context. We therefore
conclude that in the present case, the zoning commis-
sion had the "power" and "authority" to hear and to
determine environmental issues as they relate to its
ultimate hearing and determination of the zoning appli-
cation with which it was presented.

That conclusion is important in light of two argu-
ments advanced by the zoning commission. The zoning
commission argues that jurisdiction over the environ-
mental issues in the present case rests with the depart-
ment of environmental protection because of General
Statutes § 22a-2 (a), which provides in relevant part
that "[t]here shall be a Department of Environmental
Protection which shall have jurisdiction over all matters
relating to the preservation and protection of the air,
water and other natural resources of the state. . . ."
We are not persuaded by that argument.

Despite the use of the term "jurisdiction" in § 22a-2, the zoning commission has provided us with no authority to support the position that the department of environmental protection, and that department alone, is the only agency that can exercise jurisdiction in this area and promulgate regulations that are applicable. Furthermore, the zoning commission's argument that only the department of environmental protection has jurisdiction implicitly assumes that the department's grant or denial of a necessary permit vitiates the local zoning process. The zoning commission, however, also has failed to substantiate that assertion with any authority.

Indeed, we note that even though an applicant may have to obtain certain permits from the department of environmental protection for various reasons, it is entirely likely that the applicant ultimately may also have to obtain approval from the local zoning commission for the proposed project. In so doing, a local zoning commission might consider other agency environmental permits as requirements that it must take into account when considering environmental issues and reaching its ultimate conclusion on the application with which it is presented.[3]

Moreover, the zoning commission's regulations in the present case make it clear that the zoning commission will consider environmental issues beyond, or in addition to, those required by the department of environ-

---

[3] We note that in addressing the zoning commission's argument, we have not based our determination on any particular statute, permit requirement or permitting process involving the department of environmental protection or any other agency. Rather, we simply reveal the potential flaws in the zoning commission's argument. We decline to rule more specifically in light of the zoning commission's failure to provide more specific authority and the record in this particular appeal. Specifically, the record does not reveal the extent of the involvement by the department of environmental protection with the site, what permits were required for the project in question, what General Statutes apply or what permits were, in fact, granted or denied by the department.

mental protection. Specifically, § 5.3 provides in relevant part that "[t]he following standards apply to all Zones and *are intended to supplement* relevant Federal, State and local codes . . . ." (Emphasis added.) Additionally, § 5.3.1 provides in relevant part that "[a]ny use which results in contamination of air, ground, water or the natural environment *beyond the specific limits prescribed below* is prohibited. . . ." (Emphasis added.) The language in those provisions indicates that the zoning regulations take account of environmental issues apart from those that the department of environmental protection may consider.

Without more from the zoning commission, we cannot conclude that the jurisdiction of the department of environmental protection in any way impedes or negates the zoning commission's "jurisdiction," as we have defined that term, with regard to its hearing of and determining of environmental issues as part of its ultimate hearing and determination of the zoning application with which it is presented.

The zoning commission also argues that the zoning regulations apply only to environmental consequences of the uses of the proposed project, not to the construction of the project or to environmental problems that already exist on the land. That argument is in response to the plaintiff's core assertion that digging up the ground and constructing the waste treatment plant will disturb the hazardous waste in the ground and release it into the river adjoining the proposed location. We do not agree with the zoning commission's argument.

A fair reading of the zoning regulations indicates that they apply to environmental issues that arise from aspects of the application apart from the ultimate use of the proposed project. Specifically, § 5.1.1 (b) refers plainly to "the foremost objective in *site development*" (emphasis added) in its discussion of the submission of a site plan and the goal of protecting the environment.

The phrase "site development" cannot be read so narrowly so as to include only a consideration of uses. Indeed, given the normal usage of the term "development," the phrase "site development" can be taken to mean any step or action in the process of furthering or reaching the ultimate completion of the project. Such an interpretation, which we favor in this case, includes breaking ground and actual construction.

Moreover, the required findings in § 5.1.3 (b), necessary for the grant of a special permit, refer specifically to "[t]*he location of the site*" (emphasis added) with regard to not impairing the natural environment. The consideration of location obviously is different from a use consideration and implicitly contemplates an evaluation of the grounds on which a proposed project rests. The conditions of approval section, 5.1.5, also supports our conclusion that the zoning regulations provide for more than just an analysis of a proposed project's use. That section provides in relevant part that "the Commission may *modify a proposed site plan, or limit proposed uses*" (emphasis added) to protect health, safety or the natural environment. That disjunctive language indicates that uses and siting are two different considerations.

Having concluded that the zoning commission does have jurisdiction, we next consider, in accordance with *Nizzardo*, whether the plaintiff's intervention petition qualified as a verified pleading. To qualify under *Nizzardo*, the pleading must contain specific factual allegations that identify the environmental issues the intervenor intends to raise. It must also do so in a manner that will allow the zoning commission to determine whether the intervention implicates an issue within its jurisdiction.

We conclude that the plaintiff's petition satisfies that test. Of the statements alleged in the petition, one

asserts a sufficiently specific factual allegation that identifies an environmental issue. Specifically, the plaintiff alleged that the application to construct the plant "includes the siting of such systems and facility in an area historically used for repose of hazardous waste."[4] That particular allegation is factually specific. It asserts that the proposed land for the plant has been the site of hazardous waste release in the past. The allegation also identifies the environmental issue the plaintiff intended to raise. Although it is not worded with precision, the allegation identifies the issue because it reveals the plaintiff's implied concern, namely, that the hazardous waste that exists at the site will be stirred up and released in the process of constructing the plant.

Moreover, we conclude that the allegation is sufficient because it meets the desired effect of that prong of the *Nizzardo* test that seeks to ensure that the zoning commission will be able to determine, on the basis of the intervention petition, whether it has jurisdiction over the environmental issues raised. The allegation contained in the plaintiff's petition in the present case provides enough specificity to allow the zoning commission to make that determination. The allegation, taken in its barest form, alerted the zoning commission that the plaintiff had concerns about hazardous waste. The zoning regulations discuss the environment and hazardous waste. Specifically, § 5.1 discusses protecting the environment from water contamination, which obviously can occur by way of disturbing waste in the ground that may get into the river adjoining the land. Section 5.2 also applies and refers to controlling hazardous discharges for environmental protection. Finally,

---

[4] The four other allegations state, in essence, who the petitioner was, that he was familiar with the application in issue, the statutory language of General Statutes § 22a-19 and that an alternative to the proposed placement of the plant existed, namely, locating the plant elsewhere.

§ 5.3 defines hazardous waste, then sets forth regulations regarding its discharge. In light of the allegation and the zoning regulations, we conclude that the zoning commission would be able to determine whether it has jurisdiction over the environmental issues raised by the plaintiff in this case.

Upon reconsideration in light of *Nizzardo*, in accordance with the remand from our Supreme Court, we conclude that the plaintiff has demonstrated that he has standing to intervene in the proceedings before the zoning commission and to participate in proceedings before the trial court.

The judgment is reversed and the case is remanded for a hearing on the merits.

In this opinion the other judges concurred.